UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| NANCY PUTMAN, ) | |
|     Plaintiff, ) | |
| ) | 4:07-cv-63 |
| v. ) | |
| ) | *(Mattice/Carter)* |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of plaintiff's Motion for Judgment on the Pleadings (Doc. 9) and defendant's Motion for Summary Judgment (Doc. 13).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 46 years old on the date of the ALJ's decision (Tr. 20, 450). She has a tenth grade education and past relevant work experience as a laminator (sedentary and semi-skilled)

1

and hair dresser (light and semi-skilled) (Tr. 19, 20, 462, 479). She alleged disability commencing April 19, 2004. (Tr. 13, 30).

Application For Benefits-Administrative Proceedings

This is an action for judicial review of Defendant's final decision denying Plaintiff's application for Disability Insurance Benefits (DIB). 42 U.S.C. § 423. On July 2, 2004, Plaintiff filed her application for DIB, alleging a disability onset date of April 19, 2004, due to "severe nerve problems in both wrists and arms" (Tr. 57-59, 146). On November 16, 2006, Administrative Law Judge (ALJ) John F. Proctor presided over an administrative hearing where Plaintiff and vocational expert Benjamin Johnston testified (Tr. 447). Due to a defect in the recording of the November 16, 2006 hearing, a supplemental hearing was held on February 7, 2007, where Plaintiff and vocational expert Benjamin Johnston again testified (Tr. 467). Plaintiff was represented by counsel at both hearings. On February 20, 2007, the ALJ issued a decision finding that Plaintiff was not disabled because she retained the capacity to perform a significant number of sedentary[1] jobs in the national economy (Tr. 21). Thereafter, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff now seeks review under 42 U.S.C. § 405(g).

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a). Although a sedentary job is defined as one which involves sitting (usually six hours in an eight hour workday), a certain amount of walking and standing is often necessary in carrying out job duties (approximately two hours in an eight hour day). Id.; see Social Security Ruling (SSR) 83-10.

Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were supported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such evidence as a reasonable

3

mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

How Disability Benefits Are Determined

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. The five-step analysis is sequential because if, at any step, the claimant is found to be not disabled or to be disabled, then the claim is reviewed no further. 20 C.F.R. § 404.1520(a). The following are the five steps in the analysis:

Step 1: Is claimant engaged in substantial gainful activity? If so, claimant is not disabled. 20 C.F.R. § 404.1520(b).

Step 2: Does claimant have a "severe" impairment or combination of impairments that significantly limits claimant's ability to do basic work activities, and will foreseeably result in death or last at least twelve months? If not, claimant is not disabled. 20 C.F.R. §§ 404.1509, 404.1520©, 404.1521.

Step 3: Does the claimant's impairment meet or equal the criteria of an impairment described in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant is disabled, and the analysis may end without inquiry into the vocational factors. 20 C.F.R. § 404.1520(d). If inquiry is made into vocational factors, after step three but before step four, the Commissioner evaluates a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e)-(f); 404.1545.

Step 4: Does claimant's RFC permit claimant to perform claimant's past relevant work? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f).

Step 5: Does the claimant retain the RFC to perform other work in the economy? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

The burden of proof is upon the claimant at steps one through four to show disability. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Once the claimant has demonstrated the extent of claimant's RFC at step four, the burden shifts to the Commissioner to show that there is work in the national economy that may accommodate claimant's RFC. *Id.*

## ALJ's Findings

Here the issue is the ALJ's step five finding that Plaintiff could perform a significant number of sedentary jobs (with no constant/repetitive use of hands) in the national economy (Tr. 21). The ALJ made the following findings in support of the decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the insured status requirements of the Social Security Act through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since April 19, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, bilateral carpal tunnel syndrome, obesity, and osteoarthritis (20 CFR § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work activity which does not require repetitive or constant use of the hands.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 25, 1960 and is 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 19, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-21).

## Issues Presented

Plaintiff raises one issue:

1. Whether substantial evidence supports the ALJ's finding that a significant number of jobs existed which Plaintiff had the capacity to perform.

## Plaintiff's Testimony

Plaintiff testified in the year 2000, or maybe sooner, she began to have problems with her hands at her hairdressing job, involving tingling, cramping, pain, dropping things, and waking up at night. (Tr. 451-452). These symptoms affected both hands, and plaintiff eventually had carpal tunnel surgery performed on both hands by Dr. Martin Fiala in 2000. (Tr. 452, 348, 351).

Plaintiff returned to work after these first two surgeries even though she continued to have some cramping, tingling, and numbness. (Tr. 452). She initially came back working

6

approximately thirty-two hours a week. Id. at 453. When her symptoms worsened, the doctor directed that her hours first be cut to twenty-five hours and then to twenty hours per week. Id. She continued to have trouble in her work, including dropping combs, being unable to lift her arms and do her work and just having to shake them, and having to apologize to her clients over and over. (Tr. 454).

Plaintiff went back to Dr. Fiala, who again performed bilateral carpal tunnel releases in 2004. Id. at 159, 181. After the second set of surgeries, plaintiff testified she could not even take a shower without her fingers throbbing and going numb; she continued to have trouble grasping small items, the size of pencils or paper clips. (Tr. 454, 455). Her hand would go numb and her toothbrush would fall out of her hands when she tried to brush her teeth. She had difficulty writing in that her hand cramped up, causing her to have to take a break. She could only write a few lines at a time and had to ride in a car with a pillow beside her to prop up her arm. (Tr. 456). At the time of the first hearing, she testified that she only drove when it was absolutely necessary. When she picked up items that were larger than pencils and paperclips, she would bring the items in close to her chest to support it with both arms. Her fingertips would stay ice cold and discolored, and constantly go numb (Tr. 456).

Plaintiff testified that she could only sit 25 minutes to an hour at a time. (Tr. 458). She also stated that for sitting in many chairs, she needs a pillow for support. Her back pain would extend from her hips to her middle back (Tr. 457, 474). Plaintiff stated she could not walk or exercise anymore because it just made her back worse. Her neck pain radiated into her right arm as well as across the upper shoulders (Tr. 459). She testified that her sciatic nerve radiated down into her right leg and though the right knee was better since she had lost some weight, it still gave

7

her problems. Plaintiff testified she used to do yard work but is not able to anymore. She formerly cooked full course meals for her family but now only very light meals. She stated that sometimes she cannot even stir the dish (Tr. 460, 461 and 474).

### Relevant Medical Evidence

Plaintiff was treated for degenerative disc disease of the lumbar spine. (Tr. 276). An MRI dated September 19, 2002 revealed disc degeneration at L5-S1 with mild bilateral lateral recess narrowing which was probably congenital. There was normal intervertebral discs with no endplate spondylosis or facet arthrosis. There was no spondylolisthesis or spondylolysis. (Tr. 301). Her treating physician, Dr. Don Tucker, diagnosed lumbar radiculopathy in September 2002. (Tr. 296). Dr. Seyed Emadian diagnosed lumbago with myofacial syndrome, radiculopathy and spondylitic arthropathy in December 2002 as well as multi level degenerative disc disease in January 2005. On January 14, 2005, he noted she was in no acute distress and concluded she may not be a candidate for surgical intervention and encouraged her to continue with a program of weight reduction (Tr. 306, 314-315).

Orthopaedic surgeon, Dr. Vaughan Allen, diagnosed lumbar radiculopathy and noted a marked loss of range of motion in the lower back as well as hip and back pain on any type of rotation in September 2005. Dr. Allen noted an MRI showed some degenerative changes, and questionable stenosis in the low back. The MRI showed mild degenerative changes. He noted a median sensory loss in the upper extremities but did not find any other atrophy or weakness. (Tr. 372). A lumbar MRI on July 20, 2005 revealed disc herniation at L4-L5, a mild disc bulge at L3-L4, and a slight bulging of the annulus with minimal disc dehydration at the T12-L1 level.

His impression was mild or slight bulging but otherwise unremarkable MRI of the lumbar spine (Tr. 426).

Plaintiff also had some cervical radiculopathy. A cervical MRI revealed degenerative changes at C5-C6 that were referred to as mild. (Tr. 427). Her cervical problem included disc herniation with mild extrinsic pressure on the anterior cervical cord and minimal degenerative stenosis of the left neural foramen. A degenerative change was also present at C6-C7 with herniation which was described as mild. Id. There was a reversal of the cervical curve which suggested muscle spasm. Id. Dr. Emadian also diagnosed cervicalgia and cervical multi-level spondylosis and radiculopathy in July 2005. (Tr. 436).

Plaintiff also was treated for knee pain. She was assessed with osteoarthritis of the knees as diagnosed by Dr. Don Tucker in June 2004. He prescribed Celebrex and assessed weight management and osteoarthritis (Tr. 290). Plaintiff has been diagnosed as morbidly obese. When visiting Dr. Vaughan Allen's office, she was noted to be 5'5" tall with a weight of 260 pounds on September 6, 2005. (Tr. 372). She was treated at Vanderbilt University's Medical Center for Human Nutrition, being classified as a Class III obese person based on body mass index and was mentioned as a possible candidate for gastric bypass surgery in August 2003. (Tr. 310).

In June 2004, Plaintiff's treating surgeon Dr. Fiala noted her continuing discomfort and some numbness and tingling which awakened her at night one month since surgery. He noted she reported having some good and bad days. He noted her work at the beauty salon was hard on her hands and put her on a permanent restriction of no lifting greater than 10 pounds and no

9

repetitive use of both hands. He recommended she seek alternative employment and further suggested possible vocational rehabilitation provided by the State (Tr. 324).

## Vocational Expert Testimony

Two administrative hearings were held because the hearing tape of the first hearing had a defect, requiring a supplemental hearing (Tr. 467). The same vocational expert, Ben Johnston, testified at both hearings (Tr. 461-63, 479-81).

A. First Administrative Hearing

At the November 16, 2006, hearing, the ALJ asked the vocational expert to consider whether there would be any jobs that a hypothetical person could perform if that person had Plaintiff's vocational characteristics and was only able to perform sedentary jobs with "a limited use of the hands" (Tr. 462). The vocational expert testified that such a person could perform jobs as a security systems monitor and inspector (Tr. 462). The vocational expert testified that there were approximately 100 to 150 such jobs in the region and 100,000 such jobs in the national economy (Tr. 462). The vocational expert defined the region as consisting of an area which was within an hour and a half of the administrative hearing office (Tr. 462).

B. Supplemental Administrative Hearing

At the February 7, 2007, hearing, the ALJ asked the vocational expert to consider whether there would be any jobs that a hypothetical person with Plaintiff's vocational characteristics and an ability to perform sedentary jobs which (due to her carpal tunnel syndrome) would "not require constant, repetitive use of the hands" (Tr. 462). In response to this more specific hypothetical question, the vocational expert testified that such a person could perform jobs as a security systems monitor and telephone order taker (Tr. 479). The vocational expert testified that

10

there were approximately 200 to 250 such jobs in the region and 75,000 such jobs in the national economy (Tr. 480). Upon cross-examination by Plaintiff's attorney, the vocational expert reiterated that while most sedentary jobs require more than just limited use of the hands, these few jobs were the exception (Tr. 480).

Analysis

Plaintiff argues that the ALJ erred by finding a significant number of sedentary jobs existed in the national economy which she could perform (Plaintiff's Brief, Doc 10, p. 8-14). For reasons that follow, I conclude plaintiff's argument is not supported by the record.

The relevant agency regulation is found at 20 C.F.R §404.1566 which defines work which exists in the national economy. Specifically, 20 C.F.R §404.1566 provides:

> (a) work exists in the national economy when it exists in significant numbers either in the region where you live **or** in several other regions of the country. It does not matter whether—
>     (1) Work exists in the immediate area in which you live;
>     (2) A specific job vacancy exists for you; or
>     (3) You would be hired if you applied for work.
> (b) How we determine the existence of work. Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations <u>outside of the region</u> where you live are not considered "work which exists in the national economy." We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, <u>if work that you can do does exist in the national economy, we will determine that you are not disabled</u>.

20 C.F.R §404.1566 (emphasis added).

Here the ALJ found Plaintiff had the residual functional capacity to perform sedentary work activity which does not require repetitive or constant use of the hands (Tr. 18). As the

11

Commissioner argues, that restriction is the limitation imposed by her treating physician, Dr. Fiala, who put her on a permanent restriction of no lifting greater than 10 pounds and no repetitive use of both hands (Tr. 324). The ALJ at the administrative hearing asked the VE a hypothetical question assuming a person with carpal tunnel in both hands, but wanted to find a sedentary job that would not require constant, repetitive use of the hands (Tr. 479). To that question, the VE identified 200-250 jobs regionally and about 75,000 nationally. Because plaintiff only raises this issue, she does not contest the RFC assessment of the ALJ but simply asserts this is not a significant number of jobs.

Plaintiff correctly states that the ALJ couched his decision in terms of numbers of jobs in the national economy (See Plaintiff's Brief, Doc 10, p. 11). This appears consistent with the provisions of 20 C.F.R §404.1566. The ALJ cited the vocational expert's testimony that 75,000 sedentary jobs existed in the national economy which Plaintiff could perform and found that 75,000 jobs constituted a significant number of jobs (Tr. 21, 479-80). 20 C.F.R §404.1566 ("if work that you can do does exist in the national economy, we will determine that you are not disabled."). Moreover, the vocational expert explicitly testified that with the additional restrictions of no constant or repetitive use of her hands, Plaintiff could still perform the 75,000 jobs in the national economy (Tr. 479-80). Upon cross-examination by Plaintiff's attorney, the vocational expert reiterated that while most sedentary jobs require more than just limited use of the hands, these few jobs were the exception (Tr. 480). That number of jobs in the national economy is an average of 1500 jobs in each state.

12

As stated above, under the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live [s] or in several other regions of the country." 20 C.F.R. § 404.1566(a) (2008). There is no bright line boundary separating a "significant number" from insignificant numbers of jobs. *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988). What constitutes a significant number of jobs is to be determined on a case-by-case basis. *Id.* In making its determination, the court should consider "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work; and so on." *Id.; see also Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1174 (6th Cir.1990). These factors are suggestions only; the ALJ is not required to explicitly consider each factor. *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir.1999). The "decision should ultimately be left to the trial judge's common sense in weighing the language of the statute as applied to a particular claimant's factual situation." *Hall,* 837 F.2d at 275.

Plaintiff focuses on the local jobs the vocational expert identified (Plaintiff's brief, Doc. 10, p.11). Plaintiff cites *Waters v. Secretary of Health and Human Services,* 827 F.Supp. 446, W.D. Mich., 1992. In *Waters*, the Secretary concluded that there were 1,000 jobs within the entire state of Michigan that the claimant was capable of performing. However, there was no evidence of the number of jobs nationally. The court noted plaintiff's inability to travel more than two or three hours in a car, the isolated nature of the jobs identified, and the type and availability to work, in concluding the Secretary had erred in finding that the 1,000 jobs identified was significant. Next Plaintiff relies on *Lenon v. Apfel*, 191 F.Supp.2d 968, W.D.

13

Tenn., 2001, as another example of the common sense approach conducted in a Tennessee case. In *Lenon* there was a dispute as to the number of jobs that were available locally. The court held that the correct number was 65 which was not a significant number, based on the *Hall* criteria. Id. at 979.

Plaintiff asserts these cases are similar to the case at bar, however, in *Lenon* no evidence was presented at the hearing as to the number of jobs available in the national or regional economies, which Plaintiff could perform (*Id.* 979) This differs from the present case where the vocational expert explicitly testified that with the additional restrictions of no constant or repetitive use of her hands, Plaintiff could still perform the 75,000 jobs in the national economy (Tr. 479-80).

Plaintiff's focus on the vocational expert's testimony regarding the regional jobs available and argument that this number is insufficient to establish a significant number of jobs is not persuasive because a significant number of jobs was identified to exist nationally. There is therefore no additional need or requirement for a significant number of local or regional jobs to exist. *See* 20 C.F.R §404.1566.

Plaintiff argues other factors, such as the level of her disability, her testimony, and the objective findings of her doctors, should have weighed in her favor and that the ALJ should have found based on these factors the 75,000 jobs the vocational expert identified she could perform in the national economy did not constitute a significant number of jobs in the national economy (Doc. 10, pp. 10, 11). However, the ALJ did consider these factors and concluded they weighed against Plaintiff (Tr. 19-20).

The record reflects no medical source of record (treating, examining, or reviewing) found her to be disabled. Her long-time treating hand surgeon Dr. Fiala found that she could perform work consistent with the ALJ's residual functional capacity finding (i.e., sedentary work which did not require constant or repetitive use of her hands) (Tr. 18). Dr. Fiala found that Plaintiff could perform work which did not require lifting greater than 10 pounds and no repetitive use of her hands (Tr. 16, 324). With respect to her complaints of back pain and obesity, no doctor of record opined that Plaintiff was disabled or had limitations which would prevent her from working. As the ALJ noted, she merely had conservative treatment for her back, namely medication management and a recommendation for physical therapy (Tr. 17, 306, 315, 365-66). While the ALJ found Plaintiff to be obese, the record at times characterized her obesity as "mild" or "slight" and no doctor found her disabled on account of her weight (Tr. 15, 272, 274). Dr. Pinga, in a September 7, 2004 examination noted she was mildly obese, her weight at that time being down to 221 pounds (Tr. 271, 272).

As the ALJ also indicated, Plaintiff's objective diagnostic findings were mild (Tr. 16-17). For example, in May 2004, her primary care physician Dr. Tucker interpreted her lumbar MRI to show that she only had a congenitally narrowed spinal cord and degenerative disc disease (Tr. 1925, 212-13). Later, in December 2005, a CT myelogram of Plaintiff's lumbar spine showed degenerative disc disease and a "minimal disc bulge" (Tr. 365-67). Another of Plaintiff's physicians, Dr. Allen, found these findings to be mild such that he indicated physical therapy and exercise would relieve the conditions (Tr. 365-66).

Furthermore, I conclude the ALJ had a reasonable basis to find Plaintiff's objective physical examination findings did not support her allegations of disability (Tr. 16-17). Despite

15

Plaintiff's May 2004 allegations of "significant swelling," Dr. Fiala noted that the swelling was "not very impressive" upon examination (Tr. 16, 328). In November 2004, Plaintiff continued to complain of tightness and swelling in her forearms, but Dr. Fiala noted that "objectively there is really nothing to see" (Tr. 16, 320). Moreover, Dr. Emadian noted signs of guarding upon examination and diffuse giveaway weakness upon manual muscle testing (Tr. 17, 435). I agree with the Commissioner that these factors weighed against Plaintiff's allegations of disability.

Work which exists in the "national economy: means work which exists in significant numbers in the region where the Plaintiff resides or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1566 and 416.966. However, it is irrelevant whether the work exists in the immediate area where the Plaintiff resides, whether a specific job vacancy exists for the Plaintiff, or whether the Plaintiff would be hired. *Id.*; *Johnson v. Sec'y of Health and Human Servs.*, No. 92-1803, 1993 WL 20548, * 4 (6th Cir. Feb. 1. 1993) (per curiam). Employability is not considered when determining whether the Plaintiff is disabled. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (per curiam).

Further, where a VE testifies a significant number of jobs exist which the Plaintiff can perform, the fact that a small percentage of the total number of jobs is in the area where the Plaintiff resides is immaterial. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 to 1,800 jobs in the region where the Plaintiff resides was a significant number of jobs); *Barker v. Sec'y of Health and Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs are within the parameters of a significant number of jobs in the national economy); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988) (Where only 500 jobs are available in the region where the Plaintiff resides, this constitutes a significant number of jobs in the national economy);

16

*Stewart v. Sullivan*, No. 89-6242, 1990 WL 75248, *4 (6th Cir. June 6, 1990) (per curiam)(125 jobs locally and 400,000 jobs nationally are a significant number of jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs statewide, and 80,000 jobs nationwide is a sufficient number of jobs).

In addressing Plaintiff's claim, this Court must be mindful of the standard of review that applies in this case. We are bound by the substantial evidence standard: "The findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C. 405(g). Our role is limited in that we may not decide the facts anew or substitute our judgment for that of the Secretary if the Secretary's decision is supported by substantial evidence. If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. Given that standard, I conclude there is substantial evidence to support the conclusion of the ALJ that there are jobs that exist in significant numbers in the national economy that the claimant can perform in spite of those limitations the ALJ found to be reasonable. The ALJ based his conclusion on the testimony of the VE in which he identified 200-250 jobs regionally and about 75,000 nationally, which Plaintiff could perform.

Conclusion

For the reasons stated herein, I RECOMMEND that the Commissioner's decision be AFFIRMED. I further RECOMMEND that the defendant's Motion for Summary Judgment (Doc. 13) be GRANTED, the plaintiff's Motion for Judgment on the Pleadings (Doc. 9) be DENIED, and this case be DISMISSED.[2]

Dated:  January 27, 2009     s/William B. Mitchell Carter
                                      UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).